UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 13, 2016

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| | : | MAGISTRATE NO. 1:17-mj-524 (DAR) |
| | : | |
| v. | : | 18 U.S.C. § 371 (Conspiracy); |
| | : | 18 U.S.C. § 1344(2) (Bank Fraud); |
| | : | 18 U.S.C. § 1014 (False Statement on |
| IMRAN AWAN, | : | Loan and Credit Application); |
| | : | 18 U.S.C. § 1957 (Unlawful Monetary |
| | : | Transactions); |
| and | : | 18 U.S.C. § 2 (Aiding and Abetting and |
| | : | Causing an Act to be Done). |
| HINA ALVI, | : | |
| | : | |
| Defendants. | : | |

## INDICTMENT

The Grand Jury Charges that:

## COUNT ONE

## CONSPIRACY

### Introduction

At all times material to this Indictment:

1.  Defendant IMRAN AWAN ("AWAN") was married to defendant HINA ALVI ("ALVI") and both defendants worked for the U.S. House of Representatives.

2.  The Congressional Federal Credit Union ("CFCU") was a credit union whose accounts were insured by the National Credit Union Share Insurance Fund; as such, it was a financial institution pursuant to Title 18, United States Code, Section 20. CFCU was in the business of, among other things, providing its customers with home equity lines of credit.

1

3. The Thrift Savings Plan ("TSP") is a defined contribution retirement savings plan for United States civil service employees and is administered by the Federal Retirement Thrift Investment Board. ALVI had a TSP account through her job at the U.S. House of Representatives.

### Home Equity Line of Credit

4. A home equity line of credit, also known as a "HELOC," is a form of credit extended to a homeowner that uses the borrower's home as collateral. Borrowers are pre-approved for a certain spending limit, based on factors such as household income and credit score, and may draw on that limit at their discretion.

5. CFCU has a policy of not extending home equity lines of credit where the property securing that line of credit is a rental property. As such, CFCU expressly asks an applicant for a home equity line of credit whether the property the applicant intends to use as collateral is the applicant's primary residence or second home, or whether it is a rental property.

### Properties Owned and Rented by ALVI

6. ALVI owned a home located at 4809 Sprayer Street, Alexandria, Virginia ("4809 Sprayer Street")

   a. Between on or about July 17, 2015, through on or about October 2016, ALVI rented 4809 Sprayer Street to Person A and Person B for $2,099 a month. Person A and Person B originally entered into a lease with ALVI for a term of July 17, 2015, to July 31, 2018.

   b. Between on or about December 1, 2016, through on or about July 1, 2017, ALVI rented 4809 Sprayer Street to Person C for $2,100 a month. Person C had originally entered into a lease with ALVI for a term of December 1, 2016, to July 31, 2017.

7. ALVI owned a home located at 9667 Hawkshead Drive, Lorton, Virginia ("9667 Hawkshead Drive"). Between on or about February 13, 2017, through on or about June 2, 2017,

ALVI rented 9667 Hawkshead Drive to Person D and Person E for $3,100 a month. Person D and Person E had originally entered into a lease with ALVI for a term of February 13, 2017, to July 31, 2021.

### The Conspiracy

8.  From on or about December 12, 2016, through on or about February 27, 2017, in the District of Columbia and elsewhere, defendants AWAN and ALVI did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree with each other to commit offenses against the United States, that is:

   a. bank fraud, by engaging in a scheme to obtain the money, funds or other property owned by or under the control of a financial institution, in violation of 18 U.S.C. § 1344(2);

   b. false statements on a loan or credit application, by making false statements to CFCU, which is a credit union insured by the National Credit Union Administration Board, for the purpose of influencing the actions of CFCU, in violation of 18 U.S.C. § 1014; and

   c. unlawful monetary transactions, by engaging in a monetary transaction, by, through, and to a financial institution, and affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000, that was derived from bank fraud and false statements on a loan or credit application, in violation of 18 U.S.C. § 1957.

### Goal of the Conspiracy

9.  It was a goal of the conspiracy that defendants AWAN and ALVI would obtain home equity lines of credit from CFCU on two properties, 4809 Sprayer Street and 9667 Hawkshead Drive, by providing false information to CFCU regarding ALVI's intended use and occupancy of those properties as her principal residence and second home, respectively, and then transfer the proceeds from those home equity lines of credit to Pakistan.

### Manner and Means

10. It was part of the conspiracy that AWAN and ALVI obtained home equity lines of

credit from CFCU on 4809 Sprayer Street and 9667 Hawkshead Drive, in the amounts of $165,000 and $120,000 each, by having ALVI misrepresent to CFCU her intended use and occupancy of those properties as non-rental properties. Those misrepresentations by ALVI were material because CFCU would not have provided ALVI with the home equity lines of credit on those properties had CFCU known that ALVI was currently renting 4809 Sprayer Street and intended to rent 9667 Hawkshead Drive.

11. It was further part of that conspiracy that AWAN and ALVI then transferred the funds obtained from those home equity lines of credit to individuals in Pakistan by directly initiating a wire transfer of those funds from ALVI's checking account at CFCU to Pakistan.

**Overt Acts**

12. On December 12, 2016, an online application was submitted in the name of ALVI to CFCU for a home equity line of credit on 4809 Sprayer Street in the amount of $215,000. The application contained a material misrepresentation: that is, that ALVI intended to occupy the property as her primary residence and not as a rental property. The application listed two contact phone numbers known to be used by AWAN, one of which was a cellular phone issued by the U.S. House of Representatives to AWAN, and also provided an email address of "imranawan1@gmail.com." The application was submitted using a U.S. House of Representatives internet protocol ("IP") address, which was housed on servers located in the District of Columbia.

13. On December 13, 2016, another online application was submitted in ALVI's name to CFCU for a home equity line of credit, this time on 9667 Hawkshead Drive in the amount of $250,000. The application contained a material misrepresentation: that is, that ALVI intended to use 9667 Hawkshead Drive as her second home and not as a rental property. As with the previous application, the application listed the same two contact phone numbers known to be used by

AWAN, including the cellular phone issued by the U.S. House of Representatives to AWAN, and provided an email address of "imranawan1@gmail.com."

14. Based upon the foregoing material misrepresentations, on or about January 5, 2017, CFCU sent an email to "imranawan1@gmail.com" offering ALVI a home equity line of credit. On or about January 5, 2017, an email was sent from "imranawan1@gmail.com" to CFCU accepting a home equity line of credit on 4809 Sprayer Street in the amount of $165,000, and a home equity line of credit on 9667 Hawkshead Drive in the amount of $120,000.

15. On or about January 12, 2017, ALVI made the following material misrepresentations to CFCU during the closing for the home equity line of credit on 4809 Sprayer Street:

   a. That ALVI intended to use 4809 Sprayer Street as her primary residence, even though she was currently leasing that property to Person C and there were still approximately seven months remaining on Person C's lease with ALVI; and

   b. That ALVI either used 4809 Sprayer Street as her primary residence at the time or planned to do so within 60 days. That representation was false because ALVI was actually leasing 4809 Sprayer Street to Person C at the time, and there were approximately seven months remaining on Person C's lease.

16. On or about January 12, 2017, ALVI made a material misrepresentation to CFCU during the closing for the home equity line of credit on 9667 Hawkshead Drive: namely, that ALVI intended to use 9667 Hawkshead as her second home, and not rent that property, even though she rented that property to Person D and Person E pursuant to a lease with a term beginning on February 13, 2017, and ending in July 31, 2021.

17. Between on or about January 12, 2017, and January 18, 2017, CFCU transferred

into ALVI's home equity line of credit account at CFCU amounts totaling $165,000 for the home equity line of credit on 4809 Sprayer Street and $120,000 for the home equity line of credit on 9667 Hawkshead Drive. On or about January 18, 2017, $283,000 of those funds were transferred from ALVI's home equity line of credit account at CFCU to her checking account at CFCU.

18. On or about January 18, 2017, AWAN and ALVI went to the CFCU branch at the Longworth House Office Building in the District of Columbia, and AWAN and ALVI initiated a wire transfer of the $283,000 in her CFCU checking account to two individuals in Faisalabad, Pakistan. On her wire transfer request form, ALVI listed her email account as being "imranawan1@gmail.com" and her phone number as being (202) 225-XXXX, which, at the time, was a U.S. House of Representatives cellular phone number assigned to AWAN.

19. On or about January 18, 2017, a wire transfer specialist at CFCU contacted the phone number listed on the international wire transfer request form, (202) 225-XXXX, and asked to speak with ALVI. AWAN answered the phone and pretended to be ALVI. The wire transfer specialist asked AWAN for the reason for the wire transfer, and AWAN stated that it was for "funeral arrangements." The wire transfer specialist questioned whether "funeral arrangements" was a sufficient reason for such a large transfer. AWAN then changed his reason to "purchasing property." The wire transfer specialist then initiated the $283,000 wire from the United States to the two individuals in Faisalabad, Pakistan, listed on ALVI's wire transfer request form.

20. On the same day, ALVI applied for a "financial hardship withdrawal" from her TSP account in the amount of $202,859. On the application form for this financial hardship withdrawal, ALVI stated that the withdrawal was needed for "medical expenses." Because ALVI was married to AWAN, AWAN's consent to ALVI's withdrawal was needed before any funds could be withdrawn by ALVI from her TSP account. On the same day, AWAN signed the financial

hardship withdrawal form and had it notarized, thereby consenting to ALVI's financial hardship withdrawal.

21. On or about February 22, 2017, TSP transferred the requested financial hardship withdrawal of $202,859 into a joint bank account held by AWAN and ALVI at PNC Bank, which had a zero balance at the time. On or about February 27, 2017, ALVI wrote a check in the amount of $119,354.90 from her joint account with AWAN at PNC Bank, to pay off the balance of her home equity line of credit at CFCU on 9667 Hawkshead Drive. The money for this check came from ALVI's financial hardship withdrawal at TSP, which ALVI had falsely represented would be used for medical expenses.

22. On February 28, 2017, a transfer of $83,199.84 was made from ALVI and AWAN's joint PNC Bank account to another home equity line of credit account held by ALVI at PNC Bank. This transfer was used to pay-down an additional home equity line of credit that ALVI obtained from PNC Bank on 9667 Hawkshead Drive. This money also came from ALVI's financial hardship withdrawal at TSP, which ALVI had falsely represented would be used for medical expenses.

**(Conspiracy to Commit Bank Fraud, False Statements on a Loan or Credit Application, and Unlawful Monetary Transactions, in violation of 18 U.S.C. §§ 371, 1344(2), 1014, and 1957)**

## COUNT TWO

## BANK FRAUD

23. From on or around December 12, 2016, through on or around January 12, 2017, in the District of Columbia and elsewhere, defendants IMRAN AWAN and HINA ALVI participated in a scheme, and aided and abetted one another in a scheme, to obtain the money, funds or other property owned by or under the control of CFCU, whose accounts were insured by the National

Credit Union Share Insurance Fund, by means of materially false and fraudulent pretenses, representations, or promises.

24. Paragraphs 1 through 7 and 9 through 22 of Count One of this indictment are hereby re-alleged and contain the description of the above-mentioned scheme.

25. Between on or about December 12, 2016, through on or around January 12, 2017, defendants IMRAN AWAN and HINA ALVI executed and attempted to execute the scheme and artifice as set forth above, as more fully described in Paragraphs 1 through 7 and 9 through 22 of Count One of the indictment.

**(Bank Fraud and Aiding and Abetting and Causing an Act to Be Done, in violation of Title 18, United States Code, §§ 1344(2) and 2)**

## COUNT THREE

### FALSE STATEMENTS ON LOAN OR CREDIT APPLICATION

26. Paragraphs 1 through 7 and 9 through 22 of Count One of this indictment are hereby re-alleged herein.

27. On or about December 12, 2017, in the District of Columbia and elsewhere, defendants IMRAN AWAN and HINA ALVI, aided and abetted by one another, did knowingly make a false statement or report, for the purpose of influencing the action of CFCU, an institution the accounts of which are insured by the National Credit Union Administration Board, in connection with an application for a requesting a home equity line of credit on 4809 Sprayer Street, in that the defendants did falsely represent to CFCU that 4809 Sprayer Street was ALVI's principal residence, when in truth, as the defendants well knew, AVLI was leasing 4809 Sprayer Street to Person C at the time and there remained approximately seven months on her lease with Person C.

**(False Statement in Loan and Credit Application and Aiding and Abetting and Causing an Act to Be Done, in violation of 18 U.S.C. §§ 1014 and 2)**

## COUNT FOUR

## UNLAWFUL MONETARY TRANSACTIONS

28. Paragraphs 1 through 7 and 9 through 22 of Count One of this indictment are hereby re-alleged herein.

29. On or about January 18, 2017, in the District of Columbia and elsewhere, defendants IMRAN AWAN and HINA ALVI, aided and abetted by one another, did knowingly engage in a monetary transaction, by, through, and to a financial institution, and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, a wire transfer of $283,000 out of ALVI's account at CFCU, that was derived from a specified unlawful activity, that is, an offense under Section 1344 (relating to financial institution fraud) and Section 1014 (relating to Federal Deposit Insurance transaction) of Title 18 of the United States Code.

**(Unlawful Monetary Transactions and Aiding and Abetting and Causing an Act to Be Done, in violation of 18 U.S.C. §§ 1957 and 2)**

A TRUE BILL

FOREPERSON

*Channing D. Phillips (by MZ)*
ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA